

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00228-CR
_____

RICKEY CUNNINGHAM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 20-0112X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Rickey Cunningham pled guilty to two counts of sexual assault of a child, and pursuant to a plea-bargain agreement with the State, the trial court placed him on deferred adjudication community supervision for ten years. The State moved to adjudicate Cunningham's guilt for both offenses on the grounds that he violated the terms and conditions of his community supervision by testing positive for methamphetamine. After the trial court found the State's allegation true, it revoked Cunningham's community supervision, found him guilty of two counts of sexual assault of a child,[1] and sentenced him to ten years' imprisonment on each count.

In his sole point of error in this appeal, Cunningham argues that the trial court erred by admitting a laboratory report over his Confrontation-Clause objection. While we agree, we find that Cunningham was unharmed by the admission of the laboratory report because the trial court expressly excluded the laboratory result from consideration and, instead, relied on other evidence in reaching the adjudication decision. As a result, we affirm the trial court's judgment.

## I. Admission of the Laboratory Report Was Error

This Court previously held that Cunningham properly asserted, but was denied, his right to confront key witnesses during an adjudication hearing. *Cunningham v. State*, 673 S.W.3d 280, 284 (Tex. App.—Texarkana 2023, no pet.). In our prior opinion, we explained that, even though witness Elena Allen was a community supervision supervisor, she should not have been allowed to read the contents of a laboratory report authored by analyst George Dorsey or notes created by Alyssa Marcum, Cunningham's community supervision officer, over Cunningham's

---

[1]*See* TEX. PENAL CODE ANN. § 22.011(a)(2) (Supp.).

2

Confrontation-Clause objection. *Id.* at 292–93. We reasoned that Allen's testimony should have been excluded because she had no personal knowledge of the laboratory analysis or Marcum's notes, and the State did not show that Marcum and Dorsey, who were absent from the hearing, were unavailable to testify. *Id.* at 293. As a result, we reversed the judgment adjudicating Cunningham's guilt on two counts of sexual assault of a child and remanded the matter to the trial court for a new adjudication hearing. *Id.* at 294.

At the new hearing, Marcum testified. However, because Dorsey did not testify, Cunningham again objected to the admission of the laboratory report showing that he tested positive for methamphetamine, and the trial court overruled his objection. Cunningham argues that the trial court erred by admitting the laboratory report over his Confrontation-Clause objection. Based on our prior opinion, we agree.[2] However, that does not end our review. *Id.* at 292–93.

## II. Cunningham Was Not Harmed by the Admission of the Laboratory Report

As in our prior opinion, we must also decide whether Cunningham was harmed by admission of the laboratory report. Because constitutional error is involved, we must "reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). A review of the testimony at the new adjudication hearing is required to assist our analysis.

---

[2]We held that, "[t]o avoid violating Cunningham's right to confrontation, there must have been some evidence showing that Marcum and the laboratory analyst were unavailable to testify and that Cunningham had a prior opportunity for cross-examination." *Cunningham*, 673 S.W.3d at 293.

### A. The New Adjudication Hearing

Marcum testified that she reviewed the terms and conditions of Cunningham's deferred adjudication community supervision with Cunningham during a Friday, June 10, 2022, intake. According to Marcum, Cunningham said he could pass a drug test if given one. Taking Cunningham at his word, Marcum decided not to administer a drug test at that time. Instead, Marcum called Cunningham to report four days later.

Derrick Findley, also a community supervision officer for the Harrison County Adult Probation Department, assisted Marcum on June 14 in obtaining a urine specimen from Cunningham. Findley testified that, after Cunningham completed the urinalysis, he "read the cup, saw that it was positive for methamphetamines."[3] Marcum said that, in her presence, Cunningham signed an acknowledgement that the urine sample belonged to him. She recalled the conversation that she had with Cunningham in the following manner:

> I asked him about the positive drug test, if he had used meth because it was showing positive for methamphetamines and amphetamines.
>
> He told me that he should not be positive for anything, and he told me the last time that he used anything was 2020, so I told him, okay. You know, this is showing positive, so we're going to send it to the lab.
>
> And so we completed the lab paperwork together, and then he had told me that he had been around people smoking meth, but it was before he was placed on probation, and then he told me that he had smoked meth on Thursday, and I confronted him about that because whenever we did our initial intake, he said that he wouldn't fail a drug test, which would have been that Friday after the Thursday that he's now telling me that he smoked meth.

---

[3]Findley later testified, "The results showed positive for methamphetamine and amphetamines."

4

In other words, Marcum testified that Cunningham admitted to using methamphetamine before he was placed on community supervision.

The trial court admitted Cunningham's testimony from a prior hearing, in which Cunningham claimed that he smoked methamphetamine at his home on Thursday, June 9.[4] Cunningham also offered the testimony of his expert witness, Amanda Culbertson, who testified about the laboratory results but said that "a person could test positive for methamphetamine in a urinalysis 'for as long as nine days after consuming'" and that, as a result, "there was 'no way to determine' when Cunningham last used methamphetamine." *Cunningham*, 673 S.W.3d at 287.

After hearing the evidence, the trial court stated, "So putting aside the results of the test, you told them that you did methamphetamine. That's not a lab coming back saying you did it. That is you saying that you did methamphetamine."

## B.     The Record Demonstrates a Lack of Harm

In addressing constitutional harm in the context of a Confrontation-Clause violation, the Texas Court of Criminal Appeals has identified the following factors as relevant to the analysis: "(1) the importance of the out-of-court statement to the State's case, (2) whether the out-of-court statement was cumulative of other evidence, (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points, and (4) the overall strength of the State's case." *Allison v. State*, 666 S.W.3d 750, 763–64 (Tex. Crim. App. 2023) (citing *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007)).

---

[4]When the State offered the laboratory report during Marcum's testimony, Cunningham raised a Confrontation-Clause objection. The trial court overruled the objection because Cunningham told Marcum "previously that he had done methamphetamine, and it wasn't an issue of whether he was going to test positive. It was a matter of when he did the methamphetamine, so it would have been in his system."

Here, the trial court reduced the importance of the laboratory report by setting it aside. Further, the test results were cumulative of Culbertson's testimony, which was introduced by Cunningham. Culbertson included the results of the testing when testifying that the laboratory report showed that Cunningham's specimen revealed "343 nanograms per milliliter for amphetamine and 422 nanograms per milliliter for methamphetamine." The record also revealed that the trial court focused on corroborating evidence like Cunningham's admission that he smoked methamphetamine, and Findley's testimony that Cunningham's urinalysis yielded a presumptive positive result for methamphetamine and amphetamine on June 14. As for the last factor, proof by a preponderance of the evidence on an alleged violation is sufficient to support a trial court's decision to revoke community supervision at an adjudication hearing. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Lively v. State*, 338 S.W.3d 140, 143 (Tex. App.—Texarkana 2011, no pet.).

Critically, the disregarded laboratory report did not establish whether Cunningham's methamphetamine use occurred before or after the onset of Cunningham's deferred adjudication community supervision. The trial court believed that Cunningham told Marcum that he could pass a drug test on June 10 and believed Cunningham's admission to smoking methamphetamine, but rejected Cunningham's claim that the methamphetamine was smoked before instead of after his placement on community supervision.[5]

---

[5]As noted above, on the first day of his community supervision, Cunningham told Marcum that he would pass a drug test and had not used drugs for years. Four days later, after testing presumptively positive, he told Marcum that he was around others who were using the drug. Then he admitted smoking the drug, but claimed he did so five days prior. Just before announcing the decision, the trial court observed, "So this comes down to the same issue that I had before. When is Mr. Cunningham lying? When is he telling the truth?"

Trial courts are in the best position to "evaluate the credibility" of witnesses and to resolve conflicts in evidence. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). A trial court may choose to believe or disbelieve all or any part of the witnesses' testimony.

Here, considering Cunningham's admission, Culbertson's testimony about the laboratory test results, and Findley's testimony about Cunningham's presumptive positive urinalysis, and giving due deference to the trial court's credibility determination, the State's case was strong enough to prove the violation by a preponderance of the evidence, even absent the laboratory report.

After reviewing the record, we are assured that the error in admitting the laboratory report did not contribute to Cunningham's adjudication or resulting punishment. As a result, we overrule Cunningham's sole point of error.

## III.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     March 4, 2024
Date Decided:       March 26, 2024

Do Not Publish

7